**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

```
TARAH S. KNOX,                    *
                                  *
        Plaintiff,                *
                                  *
vs.                               *    CIVIL ACTION NO. 17-00506-B
                                  *
NANCY BERRYHILL,                  *
Acting Commissioner of Social     *
Security,                         *
                                  *
        Defendant.                *
```

## ORDER

Plaintiff Tarah S. Knox (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. On October 12, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 13). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 14). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

# I.  <u>Procedural History</u>[1]

Plaintiff protectively filed her application for benefits on April 20, 2015, alleging disability beginning July 6, 2011, based on degenerative disc disease; arthritis in her back, neck, legs, and feet; bulging and herniated discs; right foot injury; nerve damage in her leg and foot; plantar fasciitis in both feet; and three surgeries on her right foot to remove two cysts, repair torn tendons, and remove pieces of her navicular bone.  (Doc. 8 at 70, 113, 132).  Plaintiff later amended the alleged onset date of her disability to February 11, 2013.  (Id. at 99).  Plaintiff's application was denied and, upon timely request, she was granted an administrative hearing before Administrative Law Judge Ben E. Sheely (hereinafter "ALJ") on December 20, 2016.  (Id. at 31). Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 35).  A vocational expert also appeared at the hearing and provided testimony.  (Id. at 53). On March 24, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 15).  The Appeals Council denied Plaintiff's request for review on October 13, 2017.  (Id. at 4).  Therefore, the ALJ's decision dated March 24, 2017, became the final decision of the Commissioner.  (Id.).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on November 19, 2018. (Doc. 20). This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g).

## II. __Issue on Appeal__

> **Whether the ALJ reversibly erred in failing to expressly discuss whether Plaintiff's cervical and lumbar impairments meet Listing 1.04?**

## III. __Factual Background__

Plaintiff was born on March 16, 1975, and was forty-one years of age at the time of her administrative hearing on December 20, 2016. (Doc. 8 at 35, 113). Plaintiff reached, but did not complete, the eleventh grade in school. (Id. at 35). Plaintiff is able to read and write. (Id.).

Plaintiff last worked as a shift manager at Starbucks in July 2011. (Id. at 36). Prior to working at Starbucks, she worked as a sales representative at a flower shop from 1999 to 2002. (Id. at 37). While working at Starbucks in 2010, Plaintiff tripped and fell over a floor mat, injuring her right foot and ankle and ultimately resulting in Plaintiff having three surgeries on her right foot in a span of approximately a year and a half. (Id.).[2]

---

[2] Plaintiff received workers' compensation benefits as a result of her injuries until early 2015, when she received notice that her employment with Starbucks was terminated. (Doc. 8 at 37-38, 43).

At her hearing, Plaintiff testified that she would probably be able to stand for about five minutes before needing to sit down because of swelling in her feet and radiating pain in her lower back. (Id. at 45). Plaintiff also testified that she could sit for "[a] good 15/20 minutes" before having to stand up because of back and neck pain. (Id. at 46). Plaintiff's foot and ankle injuries were treated with medications, such as Neurontin and Zorvolex, physical therapy, and surgically. (Id. at 39, 44, 46). Her lower back was treated with medications, injections, and ultimately a surgery in September 2015. (Id. at 40-41, 44). Plaintiff was prescribed Voltaren for her neck, and she testified at the hearing that she planned to have cervical epidural injections. (Id. at 41, 462).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

_Sewell v. Bowen_, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. _Brown v. Sullivan_, 921 F.2d 1233, 1235 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." _Bloodsworth v. Heckler_, 703 F.2d 1233, 1239 (11th Cir. 1983). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. _Chester v. Bowen_, 792 F.2d 129, 131 (11th Cir. 1986); _Short v. Apfel_, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

## V.   **Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. § 404.1512. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); _see also_ 20 C.F.R. § 404.1505(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his or her

disability.  20 C.F.R. § 404.1520.

The claimant must first prove that he or she is not engaged in substantial gainful activity.  Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  Id.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  Id.  If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four.  Id.  A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his or her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work.  Carpenter, 614 F. App'x at 486.

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education,

and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  Discussion

### A.  The ALJ did not commit reversible error in failing to expressly discuss Listing 1.04.

In her brief, Plaintiff argues that she meets Listing 1.04 for disorders of the spine based on MRI evidence showing herniated discs with nerve root abutment and compression in her lumbar spine, clinical symptoms of radiating nerve pain and numbness in her left leg, and a positive straight leg test. (Doc. 9 at 4). Also in support of her argument that she meets Listing 1.04, Plaintiff points to a 2016 MRI showing herniations in her cervical spine with canal narrowing, as well as diagnoses of cervical degenerative disc disease and cervical radiculopathy. (Id.). Plaintiff's sole assertion of error is that the ALJ erred in failing to discuss whether her impairments meet Listing 1.04. (Id. at 1). The Government counters that the ALJ was not required to discuss all listings that could apply to Plaintiff's claim and that Plaintiff has failed to point to evidence establishing that she meets all of

the specified medical criteria for the Listing. (Doc. 10 at 5).

In the instant case, the ALJ found that Plaintiff has the severe impairments of cervical and lumbar issues and residuals from right foot surgeries. (Doc. 8 at 20). The ALJ found, however, that Plaintiff's impairments, when considered individually and in combination, did not meet, medically equal, or functionally equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). (Id.). In explaining his conclusion at step three of the sequential evaluation process, the ALJ wrote: "The claimant's musculoskeletal impairments do not result in inability to ambulate effectively or inability to perform fine and gross movements, and therefore are not of the level of severity contemplated at Medical Listing 1.01." (Id.).

The ALJ further found that Plaintiff has the RFC to perform a range of light work with the following additional limitations: Plaintiff requires the option to stand or sit alternatively at will, provided she is not off task more than ten percent of the work period; she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; and she can occasionally balance, stoop, kneel, crouch, and crawl. (Id. at 20-21).

Plaintiff asserts that the ALJ referenced only Listing 1.01 in his discussion at step three of the sequential evaluation process and contends that the ALJ's discussion at that step should

have specifically referenced Listing 1.04, which addresses disorders of the spine. Plaintiff's argument is without merit. As an initial matter, the Court notes the following:

> 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.01 is not a listing at all, but rather a descriptor for the category of listings that follows. The specific listings contained in the musculoskeletal category described in section 1.01 are as follows: Listing 1.02: Major dysfunction of a joint(s) (due to any cause); Listing 1.03: Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; Listing 1.04: Disorders of the spine; Listing 1.05: Amputation (due to any cause); Listing 1.06: Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones; Listing 1.07: Fracture of an upper extremity; and Listing 1.08: Soft tissue injury (e.g. burns).

Rabon v. Colvin, 2014 U.S. Dist. LEXIS 16022, at *16, 2014 WL 537560, at *5 (M.D.N.C. Feb. 10, 2014) (citations and internal quotation marks omitted); see also Zatz v. Astrue, 346 F. App'x 107, 110–11 (7th Cir. 2009) (finding claimant's argument that the ALJ erred in "referencing only Listing 1.01 (the title heading for the general category of musculoskeletal impairments) but not Listing 1.04 (the subheading for disorders of the spine)" without merit). Thus, in complaining that the ALJ's decision specifically references only Listing 1.01, Plaintiff fails to recognize the important fact that Listing 1.01 is merely a descriptor or title heading for the category of listings for musculoskeletal impairments, *which include Listing 1.04.*

Although the ALJ did not explicitly reference Listing 1.04, the undersigned finds, based upon a thorough review of the record, that the ALJ implicitly found that Plaintiff's impairments, whether alone or in combination, do not meet or medically equal Listing 1.04. The Court further finds that substantial evidence in the record supports that finding.

First, contrary to Plaintiff's assertion, the ALJ did explain, albeit briefly, why Plaintiff's impairments are not of the requisite severity to meet or medically equal the Listing, when he stated that Plaintiff's impairments "do not result in inability to ambulate effectively or inability to perform fine and gross movements[.]" Further, although the ALJ did not mention Listing 1.04 at step three, he did outline and discuss the Plaintiff's treatment for her lower back and neck issues, the results of her lumbar and cervical spine MRIs, and other relevant medical evidence in his analysis of Plaintiff's RFC.

When a claimant, such as Plaintiff in the instant case, contends that she has an impairment meeting the listed impairments, she "must present specific medical findings that meet the various tests listed under the description of the applicable impairment[.]" Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (per curiam). A diagnosis of a listed impairment alone is not sufficient. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). The record must contain corroborative medical evidence

supported by clinical and laboratory findings. Id.; accord Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original).

An ALJ's failure to expressly address whether a claimant meets a particular Listing is not error where substantial evidence in the record supports the conclusion that the claimant did not meet the Listing. See Turberville ex rel. Rowell v. Astrue, 316 F. App'x 891, 893 (11th Cir. 2009) (per curiam) ("We conclude that — though the ALJ did not explicitly discuss why [the claimant] did not actually meet Listing 112.05 — substantial record evidence supports that [the claimant's] condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [the claimant] was not disabled."; Keane v. Comm'r of Soc. Sec., 205 F. App'x 748, 750 (11th Cir. 2006) (per curiam) (stating that an ALJ's finding that a claimant's impairments did not meet a particular listing can be implied); Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) ("[W]hile the ALJ did not explicitly state that the appellant's impairments were not contained in the listings, such a determination was

implicit in the ALJ's decision . . . There may be an implied finding that a claimant does not meet a listing."); <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 n.3 (11th Cir. 1991) (stating that "it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued[,]" but finding that an ALJ's failure to do so is not reversible error where "the evidence supports the conclusions of the ALJ, despite the lack of any particular discussion of [the claimant's] impairment as it relates to [the claimed] Listing").

To meet Listing 1.04, a claimant must establish the following criteria:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for

> changes in position or posture more than once
> every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in
> pseudoclaudication, established by findings
> on appropriate medically acceptable imaging,
> manifested by chronic nonradicular pain and
> weakness, and resulting in inability to
> ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

With respect to the objective record evidence in the instant case, spinal x-rays taken in February 2013 revealed no definite disc space narrowing. (Doc. 8 at 366). An MRI taken of Plaintiff's lumbar spine on February 18, 2013, revealed "shallow non-neurocompressive" disc herniations at L4-L5 and L5-S1 with "mild caudal subligamentous distention of disk material." (Id. at 367). An x-ray of Plaintiff's lumbar spine taken in February 2015 showed some abnormal straightening and degenerative disc disease. (Id. at 419). An MRI of Plaintiff's lumbar spine taken on March 4, 2015, showed a small broad-based central herniation at L5-S1 closely approximating the descending S1 nerve root without significant distortion to the path of the descending S1 nerve root and with mild narrowing to the left exiting foramina. (Id. at 416). The March 2015 MRI also showed a mild broad-based herniation without migration with small annular tear at L4-L5, with disc material slightly effacing the descending L5 nerve roots creating mild foraminal encroachment on the left and borderline foraminal

encroachment on the right. (Id.). A pre-surgery MRI of Plaintiff's lumbar spine taken on September 9, 2015, showed a posterior disc protrusion at L4-L5 abutting both L5 nerve roots without associated canal stenosis, and a large left parasagittal disc protrusion at L5-S1 producing moderate canal stenosis and appearing to abut and compress the left S1 and left S2 nerve roots. (Id. at 424).

An x-ray of Plaintiff's left shoulder taken on September 19, 2016, after Plaintiff complained of neck and left shoulder pain, was normal, while a cervical spine x-ray taken at that time showed some degenerative disc disease with abnormal straightening and reversal of curvature. (Id. at 462). An MRI of Plaintiff's cervical spine taken on September 30, 2016, revealed a moderate left paracentral disc herniation at C5-C6 with moderate to severe central canal narrowing, and a left paracentral small herniation at C4/C5 with mild to moderate central canal narrowing. (Id. at 463).

The record shows that Plaintiff first sought treatment for her lower back in 2013 at American Family Care, where she had x-rays done, received shots, and was prescribed medication. (Id. at 366). Plaintiff presented for treatment to Roger Setzler, M.D., an orthopedic surgeon, on February 11, 2013, stating that she had woken up a few days earlier with severe back pain and that she did not know of anything that she did in the days before that to

trigger the pain.  (Id.).  Dr. Setzler gave Plaintiff medication, recommended physical therapy treatments, and ordered a lumbar spine MRI.  (Id.).  After reviewing Plaintiff's MRI results, Dr. Setzler referred Plaintiff to Ralph Irvin, M.D. for a lumbar epidural steroid injection, which was performed on March 12, 2013. (Id. at 368-70).  After Plaintiff received the lumbar epidural steroid injection in March 2013, the record shows that Plaintiff did not present to Dr. Setzler again until February 9, 2015. (See id. at 419).

Dr. Setzler's records from that visit note that Plaintiff "had an epidural two years ago, did beautifully."  (Id.).  Dr. Setzler further noted that the effects of the epidural had been wearing off over the past few months and that Plaintiff had experienced severe pain the day before that caused her to go to the emergency room and have a Toradol shot done, which provided no relief.  (Id.).  Examination revealed a positive straight leg raising bilaterally, with the right worse than the left.  (Id.). Dr. Setzler noted no definite neurologic deficit and found normal reflexes and 5/5 strength.  (Id.).  He gave Plaintiff Depo-Medrol and pain medication and set her up for another epidural steroid injection, which Plaintiff underwent on February 23, 2015.  (Id. at 418-19).  After Plaintiff's injection, Dr. Setzler ordered another lumbar MRI.  (Id. at 417).  On March 5, 2015, when Dr. Setzler went over the findings of the MRI with Plaintiff, he noted

that Plaintiff was "somewhat better but still fairly miserable" and recommended that Plaintiff get a second opinion from Tim S. Revels, M.D., an orthopedic surgeon specializing in spine care. (Id. at 415).

In his initial examination of Plaintiff, Dr. Revels discussed the possibility of Plaintiff undergoing surgery, and Plaintiff agreed to proceed with the surgery. Dr. Revels ordered a new lumbar MRI due to Plaintiff's worsening radiculitis and impending surgery. (Id. at 423). A physical examination of Plaintiff's lumbosacral spine performed by Dr. Revels revealed no swelling, deformities, weakness, atrophy, or alterations of tone, and paraspinal muscle strength within normal limits. (Id. at 422). Examinations of both lower extremities showed no swelling, deformities, weakness, atrophy, or alterations of tone. (Id. at 422-23). However, Plaintiff's lumbar range of motion was limited on all planes tested due to pain, spasm, and stiffness. (Id. at 422). On September 17, 2015, Plaintiff underwent a L5-S1 laminectomy, decompression, and left discectomy. (Id. at 433-34). The record from Plaintiff's post-operative visit on September 29, 2015 lists residual symptoms, including pain, paresthesia, and left leg pain, but states that Plaintiff's pre-operative symptoms had improved. (Id. at 438). The report from another post-operative visit on October 28, 2015 contains similar notations, but it also notes: "Pt states much better since surgery. Starting

16

to get activity." (See id. at 441).  On April 6, 2016, Plaintiff

returned to Dr. Revels with complaints of lower back and left leg

pain and numbness. Dr. Revels noted:

> Her current symptoms include low back pain and
> left leg pain/numbness.   The pain is
> improving.  It is currently mild (0-2/10) in
> severity, has an aching, a dull, a sharp, a
> burning, and a throbbing quality and radiates
> into the left sciatic nerve distribution
> distribution.   The left leg pain developed
> several years ago and is localized to the
> sciatic nerve distribution distribution.  The
> pain is intermittent and is mild and developed
> slowly over time.   The symptoms occur on a
> daily basis.  She states this is a recurrence
> of pain that first occurred years ago.

(Id. at 446).  A physical examination of Plaintiff's lumbosacral

spine showed tenderness and a limited range of motion, but

examinations of Plaintiff's lower extremities showed full ranges

of motion, normal reflexes, and no tenderness, swelling,

deformities, instability, weakness, or atrophy.   (Id. at 448).

Plaintiff was given another lumbar epidural steroid injection on

April 6, 2016, and the record shows that she was scheduled for at

least one additional injection.  (Id. at 448-49, 453).

On September 19, 2016, Plaintiff returned to Dr. Setzler with

complaints of neck pain, left shoulder pain, and pain radiating

down the arm.  (Id. at 462).[4]  Dr. Setzler's physical examination

_____

[4] Plaintiff testified at her hearing that she began
experiencing neck pain six or seven years earlier but that she

revealed some shoulder tenderness and tenderness in the posterior cervical area, as well as left triceps weakness. (Id.). However, impingement signs were minimal. (Id.). Dr. Setzler prescribed an anti-inflammatory medication and ordered an MRI of Plaintiff's cervical spine. (Id.). On October 6, 2016, after receiving the results of the cervical MRI, Dr. Setzler noted "a fairly large central herniated disc at C4-5 but no real significant neuroforaminal narrowing," as well as a central herniated disc at C5-C6 and a small central disc at C6-C7, "none of which appear to be causing significant neuroforaminal narrowing." (Id. at 464). Dr. Setzler continued Plaintiff on the anti-inflammatory, which seemed to be helping, and noted that she may want to consider getting an epidural block if her symptoms did not improve. (Id.). Dr. Setzler also spoke with Plaintiff about diet, exercise, conditioning, and posture, and advised her to follow up with his office if she had further problems. (Id.). Dr. Setzler concluded his notes by stating that he "certainly [did] not feel that she is a surgical candidate at this point." (Id.).

Viewing the record in its entirety, the undersigned is satisfied that the ALJ's implied finding that Plaintiff's impairments do not meet or equal Listing 1.04 is supported by the

_____

only sought treatment for her neck more recently when her pain worsened. (Doc. 8 at 49).

substantial evidence detailed above. At oral argument, Plaintiff's counsel clarified that the focus of Plaintiff's argument is Listing 1.04(A), thus effectively conceding that the record evidence does not support a finding that Plaintiff meets Listings 1.04(B) or 1.04(C). Indeed, while Plaintiff alleged generally in her brief that she meets the criteria for Listing 1.04, she did not specifically argue that she meets sections (B) or (C), and the record does not establish that she suffered from either spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate, as are required by those sections.

There is no question that certain aspects of Plaintiff's treatment record satisfy particular facets of Listing 1.04(A). Plaintiff points to record evidence of herniated discs in her lumbar spine with nerve root abutment and compression, and the Commissioner concedes that Plaintiff has herniated discs in her neck and lower back. Plaintiff also argues that her clinical symptoms of ongoing nerve pain and numbness radiating down her left leg and positive straight leg test support a finding that she meets Listing 1.04(A). However, while there is evidence in the record that certain criteria of Listing 1.04(A) are or may be met, Plaintiff has not met her burden of demonstrating the existence of each criterion.

To meet Listing 1.04(A), evidence of nerve root compression

must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). Although her treatment records do provide evidence of neuro-anatomic distribution of pain, limitation of motion of the spine, sensory loss, and positive straight-leg test, Plaintiff fails to point to evidence that nerve root compression from the herniated discs in her lumbar spine was "characterized by" motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Physical examinations by Dr. Revels revealed no atrophy in Plaintiff's lumbosacral spine or lower extremities. (See Doc. 8 at 422-23, 448; see also id. at 470). Plaintiff's physical examination records also include several findings of normal strength. (See id. at 419, 422-23, 448, 470-72). In the records from a physical examination of Plaintiff performed prior to her L5-S1 epidural steroid injection on February 23, 2015, Charles E. Hall, M.D. stated that "[n]o gross motor deficits were noted in the lower extremities." (Id. at 418). At oral argument, Plaintiff's counsel did not cite a single finding of atrophy or muscle weakness associated with Plaintiff's lumbar impairments. In view of the foregoing, there is substantial

evidence in the record that any evidence of nerve root compression from Plaintiff's lumbar impairments was not characterized by motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory loss or reflex loss, which is one of the criteria required by Listing 1.04(A).

Although Plaintiff's argument focuses primarily on her lower back, the Court must also address Plaintiff's contention that her cervical disc herniations and attendant complaints of radiating pain are sufficient to meet Listing 1.04(A). After reviewing the record, the undersigned finds that this argument is also without merit and that the ALJ's implied finding that Plaintiff's cervical impairments do not meet or equal Listing 1.04(A) is supported by the substantial evidence. Indeed, Plaintiff has pointed to no evidence in the record to indicate that her cervical disc herniations and associated symptoms meet all of the criteria of Listing 1.04(A).

As an initial matter, Plaintiff's cervical herniated discs are inarguably disorders of the spine. However, in contrast with Plaintiff's lumbar herniations, where MRI results showed nerve root compression and abutment, there is substantial evidence in the record that Plaintiff's cervical disc herniations did not result in compromise of a nerve root. On September 19, 2016, Dr. Setzler noted that "[i]mpingement signs are minimal." (Id. at 462). On October 6, 2016, after reviewing Plaintiff's cervical

MRI, Dr. Setzler stated that none of the herniated discs in Plaintiff's cervical spine appeared to be causing significant neuroforaminal narrowing.  (Id. at 464).  In the same report, Dr. Setzler remarked that he did not consider Plaintiff a candidate for neck surgery.  (Id.).

In addition, records documenting physical examinations of Plaintiff's neck and cervical spine contain normal findings.  On September 9, 2015, Dr. Revels noted full and painless range of motion in all planes and no swelling, deformities, weakness, atrophy, or alterations of tone in Plaintiff's neck/cervical spine.  (Id. at 422).  Dr. Revels' examination of Plaintiff's left and right upper extremities on that date likewise produced completely normal findings.  (Id.).  However, Dr. Setzler's physical examination notes from September 19, 2016, document tenderness in the neck and shoulder and weakness in Plaintiff's left triceps.  (Id. at 462).

Even assuming arguendo that Plaintiff were able to establish that her cervical disc herniations resulted in compromise of a nerve root, Plaintiff has still failed to point to evidence of limitation of motion of the spine or to evidence of sensory or reflex loss in her treatment records.  As noted supra, Dr. Revels' physical examination of Plaintiff's neck and cervical spine in 2015 showed a complete and painless range of motion.  (Id. at 422).  Although Dr. Setzler's September 2016 examination revealed

tenderness and left triceps weakness, his report omits mention of Plaintiff's cervical range of motion. (See id. at 462). Further, while Dr. Setzler diagnosed Plaintiff with cervical radiculopathy and noted that she was having "a lot of left shoulder pain, pain radiating down the arm[,]" his records do not show that Plaintiff had numbness, sensory loss, or reflex loss as a result of her cervical impairments. (See id. at 462, 464).

The law is clear that it is not sufficient to establish some of the criteria of a Listing. Plaintiff must establish all of the criteria. See Sullivan, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). This Plaintiff has failed to do. Accordingly, her claim must fail.

**VII. Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **27th** day of **March, 2019.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**